IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:06CR3040 |
| | ) | |
| v. | ) | MEMORANDUM AND ORDER ON |
| | ) | DEFENDANT NOE GUSTAVO CHAVEZ |
| NOE GUSTAVO CHAVEZ LOYA, | ) | LOYA'S "MOTION TO REOPEN AND TO |
| | ) | ASSERT OBJECTIONS TO THE REPORT |
| Defendants. | ) | AND RECOMMENDATION |
| | ) | CONCERNING SUPPRESSION ISSUES" |

Now before me is a "Motion to Reopen and to Assert Objections to the Report and Recommendation Concerning Suppression Issues" filed by Defendant Noe Gustavo Chavez Loya.  (See filing 89.)  For the following reasons, I find that the motion must be denied.

## I.   BACKGROUND

In an indictment filed on February 24, 2006, Noe Gustavo Chavez Loya (Chavez Loya) and Jose Lopez Loya (Lopez Loya) were charged with knowingly and intentionally possessing "list I chemicals, knowing and having reasonable cause to believe the list I chemicals would be used to manufacture . . . methamphetamine," in violation of 21 U.S.C. § 841(c)(2) and 18 U.S.C. § 2. (Filing 1.)  A progression order dated March 3, 2006, established a twenty-eight day deadline for filing pretrial motions.  (See filing 14.)  On March 29, 2006, Lopez Loya filed a motion to suppress evidence, (see filing 17), in which Chavez Loya joined, (see filing 19).  An evidentiary hearing on this motion was scheduled for April 17, 2006, (see filing 20), but was continued until June 5, 2006, (see filings 21-26).  After the hearing, the magistrate judge recommended that the defendants' motion to suppress be denied in all respects.  (See filing 35.) Chavez Loya and Lopez Loya filed timely objections to the magistrate judge's recommendation, (see filings 37, 41), and I resolved these objections in a memorandum and order dated July 26, 2006, (see filing 45).  Although I sustained the defendants' objections to the magistrate judge's

1

recommendation in part, I denied the defendants' motion to suppress.  (<u>See</u> filing 45 at 14.)[1]

On October 12, 2006, Chavez Loya's counsel filed a motion to withdraw.  (<u>See</u> filing 63.) This motion was granted, and new counsel entered an appearance on October 16, 2006.  (<u>See</u> filing 65.)  On January 19, 2007, Chavez Loya filed the instant motion, seeking leave to "reopen his objections to the Report and Recommendation (filing #35) . . . concerning his Motion to Suppress" because "his prior counsel . . . failed to assert valid, record based objections to the Report and Recommendation."  (Filing 89 at 1.)  More specifically, Chavez Loya seeks leave to assert five general objections that may fairly be summarized as follows: 1) the trooper unlawfully expanded the duration and scope of his investigation; 2) Chavez Loya did not consent to the search of the vehicle; 3) Lopez Loya's consent to the search of the vehicle was not valid; 4) Lopez Loya's consent to the search of Chavez Loya's bag was not valid;  and 5) Chavez Loya's conduct after the search began did not amount to consent or "ratification" of the search.  (<u>See</u> <u>generally</u> filing 90.)  My analysis of this motion follows.

## II.   ANALYSIS

My order denying the defendants' motion to suppress is not a final judgment, and therefore I am free to reconsider it.  <u>See, e.g.</u>, <u>Thomas v. Arn</u>, 474 U.S. 140, 154 (1985); <u>United States v. Torres-Luna</u>, No. 06-CR-72-LRR, 2006 WL 3254538, at *2 (N.D. Iowa 2006); <u>Rouse v. United States</u>, 359 F.2d 1014, 1015-16 (D.C. Cir. 1966) ("A pre-trial ruling on a motion to suppress does not bind the trial judge in all circumstances.").  However, the fact that I have the authority to reconsider a motion to suppress does not mean that the parties have unfettered leave to raise untimely arguments concerning the motion.  On the contrary, the Federal Rules of Criminal Procedure provide,

> A party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c) or by any extension the court provides.  For good cause, the court may grant relief from the waiver.

---

[1]The circumstances surrounding the search of the defendants' vehicle are described in detail in the magistrate judge's report and recommendation, (<u>see</u> filing 35 at 1-7), and are summarized in my memorandum and order of July 26, 2006, (<u>see</u> filing 45 at 2-4).  They need not be recounted here.

Fed. R. Crim. P. 12(e).  See also Fed. R. Crim. P. 12(b)(3)(C) (listing "a motion to suppress evidence"); United States v. Looking, 156 F.3d 803, 809-10 (8th Cir. 1998) (holding that "the district court did not abuse its discretion in denying defendant's [untimely] motion to amend [his motion to suppress] and deem[ing] defendant's involuntariness argument waived").  Nor are parties given unlimited time to file objections to a magistrate judge's report and recommendation.  See 28 U.S.C. § 636(b)(1) (providing that parties are given ten days to object to a magistrate judge's recommendation); NeCrimR. 57.3 (same); Fed. R. Crim. P. 59(b)(2) ("Failure to object in accordance with this rule waives a party's right to review.").  In short, a party seeking to reopen argument on a motion to suppress must present me with a good reason for exercising my discretion to do so.

Chavez Loya seeks leave to assert objections to the magistrate judge's report and recommendation that, in his opinion, should have been raised by his former counsel.  (See filing 89 at 1, 4.)  He adds,

> These issues should have been preserved for review and were not.
> Defendant believes it is in the interest of judicial economy to permit him to reopen
> the objection and to assert these issues.  Further Defendant asserts that permitting
> a reopening of the objection process to permit the careful consideration of these
> issues will eliminate potential procedural problems currently present in this case.

(Filing 89 at 4.)  He also expresses concern that his former counsel did not provide "constitutionally effective assistance."  (Filing 90 at 6; see also id. at 30.)

None of these points persuades me that the motion to suppress ought to be reconsidered. Chavez Loya has not identified any facts that have only come to light in the months since the hearing on the motion to suppress, and he has not referred me to any significant new legal developments.  He has neither specified the "potential procedural problems" he faces nor elaborated upon his need to preserve issues for review, though I assume he is concerned about the following warning appearing in the magistrate judge's recommendation: "The parties are notified that failure to object to this recommendation as provided in the local rules may result in a waiver of the right to appeal the trial judge's adoption of the recommendation."  (Filing 35 at 14 (emphasis added).)  In addition, it is not apparent to me that "the interest of judicial economy" would be served by revisiting the defendants' motion to suppress.  Finally, even if the

3

appointment of new counsel justifies a reopening of the time for filing objections to a report and recommendation–and Chavez Loya has submitted no authority in support of the proposition that it does[2]–Chavez Loya does not explain why he delayed the filing of the instant motion until January 19, 2007, when his new counsel entered an appearance on October 16, 2006.

Nevertheless, if Chavez Loya were to identify a particularly important, meritorious argument that ought to have been resolved in connection with the motion to suppress, he might persuade me that my ruling on the motion to suppress should be reconsidered.  I have therefore reviewed both the merits and the "procedural status" of each of Chavez Loya's arguments.  (See generally filing 90.)   This review, however, has only reinforced my opinion that the defendant's motion should be denied.

Two of Chavez Loya's arguments can be dismissed readily.  First, Chavez Loya seeks leave "to assert that he did not consent to the search."  (Filing 90 at 18.)  Yet his issue has been resolved in his favor: Chavez Loya  filed a timely objection to the magistrate judge's determination that he consented to the search, and I sustained the objection.  (See filing 45 at 7-11.)[3]  Nevertheless, Chavez Loya now states,

> The District Judge did not clearly indicate whether [Chavez] Loya's consent was properly preserved.  Defendant asks this court to explicitly indicate that [Chavez] Loya has preserved the claim that he did not consent to a search.  Defendant asks this Court to explicitly permit this issue to survive the procedural hurdles that may exist with respect to this claim.

(Filing 90 at 19.)  I confess I do not know how to indicate whether this issue is "properly preserved," nor am I aware of the "procedural hurdles" that Chavez Loya mentions.  I have found that the government failed to show that Chavez Loya knowingly and voluntarily consented to the search of his vehicle, (see filing 45 at 11), and I do not see any reason to reopen this issue.

Second, Chavez Loya's argument that he did not "ratify" the search is irrelevant in light

---

[2]On the contrary, it has been held that "[w]here defendant has been represented throughout the proceedings by counsel, the addition or substitution of new counsel does not constitute good cause compelling a court to grant relief from defendant's waiver."  United States v. DeLuna, 616 F. Supp. 534, 538 (W.D. Mo. 1985) (citations omitted).

[3]I note that it cannot be said that Chavez Loya's former counsel failed to make this objection, (see filings 37, 38), as Chavez Loya's present motion suggests, (see filing 89 at 1-2).

4

of my finding that he did not consent to the search.  (See filing 90 at 28-30; see also id. at 30 ("Although the District Court did not find consent by [Chavez] Loya, nevertheless his 'silence' during the search cannot be bootstrapped into a factual finding that he consented before the search began.").)  Put differently, my denial of the motion to suppress was not based on a finding that Chavez Loya consented to or "ratified" the search.  (See, e.g., filing 45 at 11 ("[I]f Lopez Loya's consent, standing alone, was sufficient to authorize the search, then the trooper's failure to obtain consent from Chavez Loya is irrelevant.").)  Therefore, I see no need to reconsider the motion so that I might address "ratification."

One of Chavez Loya's three remaining arguments is wholly new; that is, it has "not been raised by either party at any time in any manner" until now.  (Filing 90 at 26.)[4]  Specifically, Chavez Loya seeks leave to argue that the trooper's search of a blue bag located in the trunk of the vehicle violated the Fourth Amendment.  (See id. at 26-28.)  According to the defendant, however, the bag contained only "miscellaneous clothes" and "a 10-inch by 2-inch box of Ziplock baggies."  (Filing 90 at 5 n.8 (quoting Tr., filing 43, at 31:22-25).)  The defendant has not suggested that there is anything incriminating about these items or that they aid the government's case in any way.  While it is certainly true that within the context of a motion to suppress evidence a defendant need not argue that evidence seized in violation of the Fourth Amendment is incriminating or useful to the government, I am not presently concerned with whether the Fourth Amendment has been violated.  Rather, I must first determine whether there is good cause for considering this new argument despite the fact that it has been waived.  See Fed. R. Crim. P. 12(e).  The absence of any indication that the items found in the blue bag are consequential, coupled with the fact that there is no apparent reason why this argument could not have been raised in a timely fashion (or shortly after the appearance of new counsel), leads me to conclude that good cause is lacking.  In sum, the defendant's argument concerning the blue bag has been waived, and the defendant has not established that relief from the waiver is warranted..

---

[4]Chavez Loya also states that his ratification argument, which I have found to be irrelevant, is new.  (See filing 90 at 28-29.)  These new, untimely arguments fall squarely within the scope of the Rule 12(e) and are therefore waived unless the defendant establishes good cause for relief from the waiver.

Two arguments remain, and it seems to me that they are interdependent.  First, Chavez Loya seeks leave to argue that his detention was prolonged in violation of the Fourth Amendment.  (See filing 90 at 6-18.)  This argument was not raised by either defendant until Chavez Loya submitted it, through his former counsel, during his closing argument at the suppression hearing.  (See filing 90 at 7-8; see also Tr., filing 43, at 83:3-14.)  The magistrate judge noted that he might treat the argument as abandoned, (see filing 35 at 9 n.3), but then proceeded to analyze it in some detail, (see id. at 9-11).  Ultimately, the magistrate judge determined that the expansion of the stop was justified by a reasonable suspicion of criminal activity, and he rejected Chavez Loya's argument that the detention became unlawful.  (See filing 35 at 11.)  Neither defendant filed a timely objection to this determination.

Second, Chavez Loya seeks permission to submit an argument that "no sufficient and legal consent to search the car" was obtained from Lopez Loya.  (Filing 90 at 19.)  The voluntariness of Lopez Loya's consent was raised in the defendants' motion to suppress, (see filing 17 at 2; filing 18 at 4), and the magistrate judge concluded that "Lopez [Loya] readily and unequivocally consented," (see filing 35 at 12).  Lopez Loya then raised an objection to the magistrate judge's report and recommendation, arguing that Lopez Loya's consent did not provide a valid basis for the search in light of the trooper's failure to obtain consent from Chavez Loya.  (See filing 42 at 8 (citing Georgia v. Randolph, 126 S. Ct. 1515 (2006)).)  I addressed this argument at length, and I concluded that "Lopez Loya had at least joint control over the vehicle with Chavez Loya, and a reasonable officer would be justified in the belief that Lopez Loya had authority to permit the search of the vehicle . . . ."  (Filing 45 at 12.)  Chavez Loya concedes that "[n]o good faith argument based on these undisputed facts can be made that Lopez Loya lacked common authority to consent to a search."  (Filing 90 at 22.)  He seeks leave to argue, however, that Lopez Loya's consent was not voluntary because "1. [t]he consent was a tainted product of the prolonged detention"; "2. [t]he officer did not advise Lopez Loya of the option to refuse [consent]"; and "3. [t]he officer asked questions entirely unjustified by the basis for the stop (running a stop sign) and unconnected to any reasonable suspicion to expand the scope of the stop."  (Filing 90 at 23.)  In other words, he argues that Lopez Loya's consent was invalid because it was the product of an "illegally prolonged detention."  (Id.)  Therefore, each of Chavez

6

Loya's two remaining arguments depends, at bottom, upon the lawfulness of the defendants' detention.

I have carefully reviewed the magistrate judge's report and recommendation, (filing 35), along with the transcript of the hearing before the magistrate judge, (filing 43), and Chavez Loya's arguments that the trooper unlawfully expanded the scope of the detention, (see filing 90 at 6-18, 19-25), and I find that the magistrate judge correctly determined that the trooper developed a reasonable suspicion of criminal activity unrelated to the original traffic offense.

When a law enforcement officer lawfully stops a driver, he is "entitled to conduct an investigation 'reasonably related in scope to the circumstances which justified the interference in the first place.'" United States v. Jones, 269 F.3d 919, 924 (8th Cir. 2001) (quoting Terry v. Ohio, 392 U.S. 1, 20 (1968)).  For example, "Once [an] officer makes [a] traffic stop, the officer may lawfully check the driver's license and registration, ask the driver about his destination and purpose, and request that the driver sit inside the patrol car."  United States v. Brown, 345 F. 3d 574, 578 (8th Cir. 2003); see also United States v. Munroe, 143 F.3d 1113, 1116 (8th Cir. 1998). The officer may also run computer checks to determine whether the driver has a criminal history or outstanding arrest warrants, see Jones, 269 F.3d at 924, and may question passengers to verify information provided by the driver, see United States v. Barragan, 379 F.3d 524, 529 (8th Cir. 2004).  The officer may then expand the scope of a traffic stop if the driver's responses and the circumstances give rise to a reasonable suspicion that criminal activity unrelated to the traffic stop is afoot.  See United States v. Barahona, 990 F.2d 412, 416 (8th Cir. 1993); United States v. Ramos, 42 F.3d 1160, 1163 (8th Cir. 1994) ("If reasonably related questions raise inconsistent answers, or if the licenses and registration do not check out, a trooper's suspicions may be raised so as to enable him to expand the scope of the stop and ask additional, more intrusive, questions. If, however, no answers are inconsistent and no objective circumstances supply the trooper with additional suspicion, the trooper should not expand the scope of the stop.").  "Whether an officer has reasonable suspicion to expand the scope of a traffic stop is determined by looking at 'the totality of the circumstances, in light of the officer's experience.'"  United States v. Linkous, 285 F.3d 716, 720 (8th Cir. 2002) (quoting United States v. Dodson, 109 F.3d 486, 488 (8th Cir.1997)).  "Though each factor giving rise to suspicion might appear to be innocent when

7

viewed alone, a combination of factors may warrant further investigation when viewed together." Id.

It has been established that the initial stop of the defendants' vehicle was lawful. (See filing 45 at 4-7.) Before he expanded the scope of the traffic stop to ask Lopez Loya "questions about drugs and guns and [for] consent to search," (Tr., filing 43, at 40:1-2), the trooper was aware of the following circumstances, among others: 1) the vehicle driven by Chavez Loya and Lopez Loya exited the interstate after passing ruse drug checkpoint signs and was followed closely by another out-of-state vehicle; 2) there were no services at the exit, and the trooper was familiar with the vehicles that commonly used the exit; 3) after exiting the interstate, the vehicles eventually headed back west in the opposite direction of their stated destination; 4) although the second vehicle was traveling with the defendants, that vehicle did not stop when the trooper pulled over the defendants' vehicle; 5) the driver (Chavez Loya) had no license, and the passenger (Lopez Loya) had no identification; and 6) the defendants stated that they borrowed the vehicle for their trip, but they misnamed the owner of the vehicle. (Id. at 10:11-12:9, 13:16-14:2, 15:2-21:23, 23:18-26:12, 39:25-41:10, 42:20-43:23.) In the trooper's own words,

> For me it started the second they exited the -- exited at my exit. I set up a ruse drug checkpoint sign and not a vehicle had gotten off, and all of a sudden I've got two on top of each other, out-of-state vehicles and nose-to-tail, like if someone was traveling with someone ahead of them and they all of a sudden get off at an exit and you're -- what are you doing? Getting off here? Right on top of them, that kind of close. Like when they went by I thought, "Oh, that black one is going to hit the red one." So it started for me right there. First the exit at the checkpoint signs and now you're traveling together and you don't want to lose each other in the middle of nowhere. You're within a car's length of the guy ahead of you. Rolled a stop sign and keeps rolling and doesn't want to be anywhere in this area. This is a drug checkpoint ahead. I'm going that way, and he chose another direction and goes north. The guy behind him, not sure what's going on. His turn signal stops, following. Catch up to him. They're still nose-to-tail. I wait for them. When I get up to that next stop sign, they go west. The vehicle was traveling east on a 75-mile-an-hour highway. It gets off at drug checkpoint signs. Goes three miles out of their way and now turns around and starts to go west in the middle of nowhere. It's not like there was a gas station there you could stop. "Well, let's go somewhere else." There was no mind changes. Bailed and went.

> When I got up there and stopped them, the passenger didn't have an ID.

> The driver doesn't have a driver's license.  Nobody knows who owns this car.
> They took a shot at a Juan.  It ended up being a whole different name.  They said
> they had been out driving for five days and mentioned snowboarding with another
> vehicle, the black vehicle, in Wyoming.  Just a lot of stuff didn't add up and it just
> seemed like it would be an excellent time to ask these two young men for
> permission to search their vehicle.

(Id. at 40:3-41:10.)

In light of the trooper's extensive experience and training, (see Tr., filing 43, at 7:1-9:8), the totality of the circumstances was sufficient to give rise to a reasonable suspicion of criminal activity that justified the trooper's questions about drugs and guns, along with his request for permission to search the vehicle.  Although I grant that the trooper seems to have harbored a suspicion that the defendants were transporting drugs even before he stopped their vehicle, it is clear that he did not expand the detention based solely on this "hunch."  Rather, he asked questions reasonably related to the scope of the traffic stop until such time as his suspicions were reasonably aroused.  See Ohio v. Robinette, 519 U.S. 33, 38 (1996) (holding that the subjective intentions of the officer did not make the continued detention of a motorist illegal under the Fourth Amendment when the objective circumstances justified the officer's action).  In short, the magistrate judge correctly determined that the continued detention of the defendants was lawful.

In sum, the circumstances of this case do not suggest that the reopening of the time for filing objections–which lapsed many months ago–is warranted, and I am not persuaded that I ought to reconsider my ruling on the defendants' motion to suppress.  Therefore, I must deny the defendant's motion.  I wish, however, to commend counsel for his zealous advocacy on behalf of his client and his thorough, forthright briefing of the issues that he sought to have me consider (or reconsider, as the case may be).

**IT IS ORDERED** that Noe Gustavo Chavez Loya's motion to reopen and to assert objections to the magistrate judge's report and recommendation, filing 89, is denied.

Dated February 28, 2007.

BY THE COURT

s/ Warren K. Urbom
United States Senior District Judge

9